## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FEDERAL TRADE COMMISSION,
600 Pennsylvania Ave., N.W.
Washington DC 20580

      Plaintiff,

  v.

RESTORO CYPRUS LIMITED,
a Cyprus company,
Themistokli Dervi, 41,
Hawaii Nicosia Tower, Floor 8,
Flat/Office 806-807
1066, Nicosia, Cyprus, and

REIMAGE CYPRUS LIMITED,
a Cyprus company,
Themistokli Dervi, 41,
Hawaii Nicosia Tower, Floor 8,
Flat/Office 806-807
1066, Nicosia, Cyprus,

      Defendants.

Case No. _____

**COMPLAINT FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF**

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

1.    The FTC brings this action for Defendants' violations of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108. For these violations, the FTC seeks relief, including a permanent injunction, monetary relief, and other relief, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, and the TSR, 16 C.F.R. Part 310.

1

## SUMMARY OF THE CASE

2.      Since at least January 2018, Defendants have operated a tech support scheme that has bilked tens of millions of dollars from consumers, particularly older consumers. Defendants have been using false and unsubstantiated claims about the performance and security of consumers' computers in the marketing of their purported computer security and repair services, in violation of the FTC Act and the TSR.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(2), and (c)(3), and 15 U.S.C. § 53(b).

## PLAINTIFF

5.      The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

## DEFENDANTS

6.      Defendant Restoro Cyprus Limited ("Restoro") is a Cyprus company with its corporate address at Themistokli Dervi, Hawaii Nicosia Tower, Floor 8, Flat/Office 806-807 1066, Nicosia, Cyprus. It was previously an Isle of Man company named Restoro Limited with its corporate address at Sovereign House, 4 Christian Road, Douglas, IM1 2SD, Isle of Man.

Restoro transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Restoro has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

7.     Defendant Reimage Cyprus Limited ("Reimage") is a Cyprus company with its corporate address at Themistokli Dervi, Hawaii Nicosia Tower Floor 8, Flat/Office 806-807, 1066, Nicosia, Cyprus.  It previously was an Isle of Man company with the name Reimage Limited and its corporate address at Sovereign House, 4 Christian Road, Douglas, IM1 2SD, Isle of Man.  Reimage transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, Reimage has advertised, marketed, distributed, or sold computer security or technical support services to consumers throughout the United States.

## COMMON ENTERPRISE

8.     Restoro and Reimage have operated as a common enterprise while engaging in the deceptive acts and practices and violations of the FTC Act and the TSR, as alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, business functions, employees, officers, managers, or office locations.  Because Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

3

## COMMERCE

9.      At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

**Defendants Use Deceptive Pop-Ups, Internet Ads, and Scans to Lure Consumers to Their Offers**

10.     Since about January 2018, Defendants have marketed deceptively, over the internet and through telemarketing, purported computer repair services to consumers, under the brand names Restoro and Reimage.  Defendants use the same deceptive methods to market and sell Restoro and Reimage.  The methods include deceptive pop-ups, internet marketing, scans for purported errors and risks, and telemarketing.

11.     Defendants' pop-ups and internet ads lure consumers with an offer of a free scan or of an "update" to consumers' computers.  Regardless of the computers' actual health, the scan or update inevitably finds purported performance or security issues requiring repairs.

**Deceptive Pop-Ups**

12.     Defendants use pop-ups with system warnings and threats to scare consumers into believing that their computers suffer from performance or security issues requiring immediate attention.  The pop-ups appear unsolicited when consumers are using the internet.  Examples of such pop-ups from January 2020 and March 2020 are below:





13.     The pop-ups warn consumers that their computers are damaged or infected by viruses, and direct them to "scan" or "update" their computers or operating systems within a couple of minutes to avoid harm.

14.     On numerous occasions, pop-ups impermissibly carried the Microsoft Windows' logo.

15.     The warnings and claims in the pop-ups are false, misleading, or unsubstantiated. Defendants do not know what performance or security issues, if any, the consumers' computers have when the pop-ups appear on consumers' screens.

16.     The pop-ups invite consumers to click on a button to initiate a scan or an update.

### Deceptive Internet Advertising

17.     Defendants also use internet advertising to lure consumers, like the example below from June 29, 2022:



Ad · http://www.restoro.com/restoro_free/pc_repair

Download Restoro© For Free - 2022 Advanced Repair Tool
**Restore** & Repair Windows Systems in 2 Mins. Easy & Guaranteed. Download Now!
Safe, Quick & Easy to Use, **Free** Scan, Instant Repair, 2022 Latest Repair...

18.     This advertising offers a free scan and diagnosis that "Restore & Repair Windows Systems in 2 Mins."  Clicking on the link leads to a scan of the computer.

### Defendants' Websites

19.     Defendants market Reimage's services through reimageplus.com.  An example of the reimageplus.com website from August 3, 2022, is below.



20.     The website states that "Reimage pc repair tool is an online computer repair service."  Clicking on the download button leads to a scan of the consumer's computer.

21.     Defendants market Restoro through the website restoro.com.  The claims on the website include that Restoro "securely and safely repairs any PC to an optimized state" and will "Remove malware threats."  It also includes a link to download a scan that is powered by Reimage.  An example of the restoro.com website on May 24, 2023, is below:



**Defendants' Deceptive Free Scan and Telemarketing**

22.     To replicate consumers' experience with Defendants' marketing, FTC investigators made four undercover purchases of Defendants' services.  The investigators conducted two undercover purchases involving Restoro during May and June 2022, and two undercover calls involving Reimage during July and August 2022.  The computer used for the purchases was free of performance and security issues.  It also had an antivirus program installed.

23.      Defendants' method of operation was the same in all of the purchases, with a scan showing numerous purported problems and security concerns, followed by an invitation to purchase a software to repair the alleged issues.  Once the investigators purchased the software, they received a number to call to "activate" the software every time.  When the investigators called that number, Defendants' telemarketers made false performance and safety claims about the computer used by the investigators and attempted to sell the investigators repair services by a purported "technician" during each of the undercover purchases.

24.      As shown in the screenshots below, the Restoro scan on June 29, 2022, identified "552 issues" needing "Repair," and the Reimage scan on August 3, 2022, identified 1,244 such "issues."  Those issues purportedly included "PC Privacy issues," "Junk files," "Crashed Programs," and "Broken Registry issues":





25.     As shown in the screenshots above, following the scan's results, Defendants direct consumers to click on a button to repair the computer.  After clicking the "Start Repair" box, consumers are taken to a sales page and offered three alternative "PC Repair Plan[s]" for purchase, as shown in the screenshot from June 29, 2022, below.  The costs range from $27 to $58.



26.    As shown in the screenshot below from June 29, 2022, after purchasing the Restoro or Reimage software, consumers are directed to call a phone number to "Instantly Activate Your Software."



27.     Defendants' telemarketers who answer consumers' "activation" calls represent that consumers' computers have performance and security problems that cannot be fixed by the software alone.  The telemarketers then upsell consumers to purchase repair services done by a technician that cost hundreds of dollars.

28.     The telemarketers first direct consumers to download a software that allows the telemarketers to gain remote access to consumers' computers.  Once they gain such access, the telemarketers walk the consumers through a process that purportedly finds errors, critical warnings, viruses, or malware.

29.     Defendants' telemarketers routinely use Microsoft Windows' Event Viewer function on consumers' computers to show purported issues and represent that there are numerous errors and warnings, as in the example below from an FTC investigator's undercover purchase on August 3, 2022:

13



30.     However, Event Viewer messages, as those shown above, are typically not an indication that a computer has to be repaired.  Such errors and warnings appear routinely during the normal operation of a computer.  Often such messages merely reflect routine information and events, such as failure to log in due to mistyped passwords, completed antivirus scans, and other mundane system details.

31.     Defendants' telemarketers also often represent, falsely or without substantiation, that there are drops in the performance of consumers' computers, or that the computers are unstable.

32.     In addition, the telemarketers routinely represent, falsely or without substantiation, that there are likely to be viruses or malware or other security threats on consumers' computers.  For example, the telemarketers made the following representations to FTC investigators in their undercover calls on June 29, 2022, and August 3, 2022:

•   "[W]ell, you know what Trojans can do.  You know what viruses can do.  Right?  It's one of the worst type of threats.  It can completely even screw up your machine, or they

14

can even gain back their access on your computer and steal some of your information."

- "The technicians were asking if you're using the computer for personal stuff like shopping, banking, emails or just for basic stuff at home? … [A]gain, your computer might have been infected with security threats that can lead to hackers stealing data.  So we need them all to be removed from the computer and we need the computer to be protected."

33.    The telemarketers also use VirusTotal software to claim that consumers' computers have viruses.  In reality, the way that the telemarketers use VirusTotal does not show that the computer that the telemarketer accessed remotely has a virus.  The below screenshots from the FTC investigator's August 3, 2022 undercover purchase shows how the telemarketer deceptively circled (in red) viruses and malware detections to the investigator as if those were issues on the investigator's computer, when in fact those were issues identified on different computers.  The first screenshot shows the number 0, and the term undetected.  The telemarketer then selects the tab called "relations" and subsequently highlights the red items displayed.







34.     After displaying VirusTotal and Event Viewer, Defendants' telemarketers

typically display a page listing items to be fixed, including errors and warnings, performance

problems, and viruses, such as the screenshot below from the FTC investigator's August 3,

2022 purchase (blue highlighting done by the telemarketer during the call) showing "310 critical, errors, and warning events" and "4 viruses (malwares and trojan viruses)":



35.    The telemarketers then recommend repair services by a technician.  They offer various "repair plans" costing $199.99 for "SILVER," $299.99 for "GOLD," or $499.99 for "PLATINUM" services.

36.    Consumers pay for Defendants' services through a PayPal account or credit card. For consumers who select the PayPal payment option, Defendants submit the charges to PayPal through one of their affiliated companies, or through the billing aggregators Nuvei and Paddle. PayPal withdraws money from consumers' accounts and sends money to Defendants, either directly or through the billing aggregators.

37.    For consumers who pay by credit or debit card, Defendants send the charges to billing aggregators, who have contracts with payment processors or acquiring banks to submit the charges into the credit card systems (Visa, MasterCard, etc.).  The billing aggregators receive money when consumers pay their credit card bill, and then they send money to

Defendants.

38.     Since 2018, Defendants have deceptively taken tens of millions of dollars from

consumers, including older adults.

## DEFENDANTS ARE VIOLATING OR
## ABOUT TO VIOLATE THE FTC ACT AND THE TSR

39.     Defendants have continued their unlawful practices despite warnings from

multiple sources about their deceptive conduct, including from credit card networks such as

Visa, companies providing payment processing services to Defendants, and from AppEsteem, a

company that Defendants hired to certify their services.  Defendants have also received

numerous complaints from consumers.

40.     In October 2018, AppEsteem wrote an email to the Sales Marketing Advisor of

Defendants stating that AppEsteem had made a call to the Reimage call center and determined

that it was engaged in practices that warranted AppEsteem listing the company as a "Deceptor"

on AppEsteem's certification and review website.  The email included a link to a report of the

call with screenshots of the agent using Event Viewer and showing errors and warnings.  In the

report, and in a follow-up email sent to the Sales Marketing Advisor on November 9, 2018,

AppEsteem detailed how the agent's practices were deceptive, noting that Defendants' agent

was a salesperson, not a diagnostician.  The Sales Marketing Advisor and the Head of Service

and Global Operation at Reimage both wrote to the CEO of Reimage on October 11, 2018,

sharing the emails from AppEsteem.  The Head of Services and Global Operation stated in his

email to the CEO of Reimage that the relevant practice was "part of our DNA."

41.     In March 2019, billing aggregator Nuvei sent an email to the CEO of Reimage

telling him that MasterCard had found the technical support phone number for Reimage on

multiple scam or complaint sites on the internet.

18

42.     In May 2019, BlueSnap, a company that provided payment processing services to Defendants, put Reimage in a risk monitoring program because of excessive chargebacks. BlueSnap has its own monitoring program with a 1% chargeback threshold. Reimage's chargeback rates were 3.29% for November 2018, 1.62% for December 2018, 2.07% for January 2019, 4.26% for February 2019, 3.11% for March 2019, 3.46% for April 2019, and 2.05% for May 2019.

43.     Chargebacks occur when consumers dispute charges with their credit card companies. As a result of excessive and chronic chargebacks, BlueSnap increased the chargeback fee it charged Defendants to $135 for each chargeback. This is more than the cost of the Restoro or Reimage software, and a significant portion of the cost of the upsold tech support services.

44.     From March 2020 to February 2022, the CEO of Reimage also received reports from Defendants' employees providing information about the number and details of consumer complaints. For example, a report for March 1–7, 2020, which the CEO of Reimage received on March 11, 2020, stated that there were 203 complaints from purchasers, including at least 34 purchasers who complained that the software had damaged their computers.

45.     In March 2020, Cleverbridge, one of Defendants' billing aggregators, was notified by Visa about fraudulent behavior associated with Defendants' marketing. Visa highlighted the use of a deceptive pop-up warning about a Trojan virus. Visa further noted that the pop-up led to a telemarketer who made claims about viruses and to errors and warnings on the computer. Immediately thereafter, Cleverbridge sent an email to Reimage's CEO with the subject line: "Visa Concerns – Urgent," stating that "Today we were approached by Visa after what they are calling fraudulent behavior."

46.     On or about December 2020, a telephone company wrote to Defendants' telecom service provider and warned that:

> "Scammers in the Philippines are using your service to scam hard working and innocent people in Canada and the US.
> Their number is: 888-857-0967
> Please blacklist this user from having any further services with you"

Defendants' telecom service provider then wrote to Defendants reporting that:

> "We have received a complaint from our upstream vendor regarding your DID number +1888-857-0967. The complaint claims the DID number is used by a scam operation in the Philippines, aimed at scamming the USA and Canadian residents."

Defendants subsequently sent their telecom service provider a letter with the following response:

> "The toll-free number 1888-857-0967 is one of the contact channels of Reimage's support lines. Reimage's call center operations hold its office within the Central Business District of Makati, Philippines and is a fully registered entity with complete licenses to operate under the name Reimage PH."

47.     In January 2021, Visa placed a company that Defendants used to submit Restoro's charges to PayPal in its Dispute Monitoring Program based upon excessive chargebacks in December 2020, with a rate of 3.8% (calculated as the total number of chargebacks over total number of sales in a given month).  To manage risk and minimize fraud, Visa has developed a program to monitor companies with excessive chargebacks.  Visa's Dispute Monitoring Program flags companies that have chargebacks at 0.9% or higher in a month.

48.     Defendants' weekly report for February 7–13, 2022, which the CEO of Reimage received on February 16, 2022, showed 281 complaints from purchasers.  9.25% of those who complained reported that the Restoro or Reimage software harmed their computers by causing a "Pure Black Screen," and 39.8% percent reported that the software did not fix anything.

49.     In October 2022, the department manager of Defendants' call center provided written guidance to Defendants' telemarketers, stating: "There are a large number of errors logged on every normal client home system, this doesn't conclude that there are problems nor that your system is starting to fail."  Notably, however, in the same document, telemarketers were informed that they could advise consumers that the "errors and warnings in the Event Viewer are accumulating or piling up."

50.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission because, among other things: Defendants have engaged in unlawful practices involving the marketing and sale of Restoro and Reimage services over many years; remain in the tech support business and maintain the means, ability, and incentive to resume any unlawful conduct that has ceased; knew about complaints from third parties and consumers; and engaged in unlawful practices while knowing about the deceptive practices and harm to consumers.

**VIOLATIONS OF SECTION 5 OF THE FTC ACT**

51.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

52.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## Count I

### Deceptive Representations

53.     In numerous instances, in the course of marketing, offering for sale, and selling computer software or services, Defendants represent or have represented, expressly or by implication, that they have identified performance or security issues on consumers' computers.

54.     Defendants' representations as set forth in Paragraph 53 of this Complaint are false, misleading, or were not substantiated at the time the representations were made.

55.     Therefore, Defendants' representations as set forth in Paragraph 53 of this Complaint constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

56.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C.§§ 6101-6108, in 1994.  The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter.

57.     Defendants are sellers or telemarketers engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

58.     The TSR prohibits any seller or telemarketer from making a false or misleading statement to induce any person to pay for goods or services.  16 C.F.R. § 310.3(a)(4).

59.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II

### Deceptive Telemarketing Calls in Violation of the TSR

60.    In numerous instances, in the course of telemarketing their goods and services, Defendants have made false or misleading statements, directly or by implication, to induce consumers to pay for goods or services, including, but not limited to, representations that Defendants have identified performance or security issues on consumers' computers.

61.    Defendants' acts or practices, as described in Paragraph 60 of this Complaint, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(4).

## CONSUMER INJURY

62.    Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

A.    Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by Defendants;

B.    Award monetary and other relief within the Court's power to grant; and

C.    Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated: March 12, 2024

*Russell Deitch*

RUSSELL DEITCH
202-326-2585
rdeitch@ftc.gov
SUNG W. KIM
202-326-2211
skim6@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION
Federal Trade Commission
600 Pennsylvania Ave. NW
Washington, DC 20580